UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CELLCO PARTNERSHIP d/b/a<br>VERIZON WIRELESS,<br><br>    Plaintiff,<br><br>v.<br><br>MARIE K. LARSEN, JEFFREY MAIDA, and<br>MATTHEW POOLE, in their capacity as Members<br>of the Select Board of Chilmark, Massachusetts; and<br>the TOWN OF CHILMARK, MASSACHUSETTS,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

### Introduction

1. This is an action for declaratory relief and mandamus to redress violations of the Telecommunications Act of 1996 ("TCA") by the Town of Chilmark, Massachusetts ("Town") and its Select Board ("Board"). Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Plaintiff" or "Verizon"), a federally licensed provider of personal wireless services, is seeking relief from this Court because the Board, in violation of the TCA and in excess of its authority under state law, illegally denied Verizon's application (the "Application") for permission under M.G.L. c. 166 §22 (the "Grant of Location Statute") to attach small wireless facilities ("Small Cells") to fourteen existing privately-owned utility poles along Town roads.

2. Verizon filed the Application to address longstanding and documented deficiencies in the wireless service it is able to provide in Chilmark through a distributed antenna system ("DAS") owned and operated by American Tower Company ("ATC"), on which Verizon and two other wireless carriers are tenants. The DAS suffers from inherent technical constraints that limit the quality-of-service Verizon can deliver—constraints that the Town itself has publicly acknowledged and complained about. Rather than allow Verizon to remedy these service deficiencies through its own dedicated infrastructure, the Board denied the Application without any evidence in the record to support its decision, in an apparent effort to leverage Verizon into remaining on the DAS. This Court should order the Town to comply with the TCA and state law and approve the Application.

3. The Board's denial of the Application violates the TCA in several respects. First, the Board has violated 47 U.S.C. §332(c)(7)(B)(iii) because it has denied the Application without putting the decision in writing or explaining the reasons for it, and its decision, in any case, is not supported by substantial evidence contained in a written record.

4. Second, the Board's denial of the Application violates 47 U.S.C. §332(c)(7)(B)(i)(I) because it unreasonably treats Verizon differently, with respect to its Application to install Small Cells, than it has treated the provider of a functionally equivalent service, namely the DAS that the Board previously authorized which operates using similar equipment attached to poles in Town rights of way, and through which wireless carriers, currently including Verizon, provide personal wireless services.

5. Third, the Board's denial of the Application violates 47 U.S.C. §332(c)(7)(B)(i)(II) because it has the effect of prohibiting Verizon from upgrading its network in Chilmark to expand its effective coverage area and increase its capacity to handle calls and data transmissions so that

2

it can provide reliable service in Chilmark. Notably, the Board itself has complained to Verizon about the quality of its service in Chilmark and explicitly urged Verizon to address those concerns. Yet the Board denied the very Application by which Verizon sought to do just that—without making any findings or citing any evidence in the record to justify its decision. The Board's denial of the Application also has the effect of prohibiting Verizon from employing technology and offering services that it is licensed to offer and would like to provide in Chilmark but cannot provide through the DAS.

6. The denial of the Application, therefore, also violates and is preempted by 47 U.S.C. §253(a), which forbids local governments to apply legal requirements that prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service. In practical effect, the Board's denial compels Verizon to remain a tenant on the ATC-operated DAS, thereby conferring upon ATC a de facto monopoly over the provision of wireless service in Chilmark's public rights of way. As the sole entity the Town permits to operate antenna facilities on utility poles in the Town's rights of way, ATC is able to dictate the terms, pricing, and technological capabilities of the infrastructure through which Verizon must deliver its services—an outcome the TCA was specifically designed to prevent.

7. The Board's denial of the Application also violated state law because it was arbitrary and capricious, and contrary to the evidence in the administrative record, and in excess of the Board's authority to regulate attachments to utility poles in the right of way under the Grant of Location Statute.

**Jurisdiction and Venue**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, as Plaintiff's claims arise under the under the Supremacy Clause of the United States

3

Constitution and the laws of the United States, specifically, 47 U.S.C. §332(c)(7)(B)(v), and 47 U.S.C. §253. Because this case seeks a declaratory judgment regarding Plaintiff's rights under federal law, this Court also has jurisdiction under 28 U.S.C. §§ 2201 and 2202. Jurisdiction over Verizon's state law claim is based on 28 U.S.C. § 1367 because that claim forms part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this District and all events or omissions giving rise to this action occurred within this District.

**Parties**

10. Plaintiff Verizon is a general partnership organized under Delaware law, with its principal place of business at 1 Verizon Way, Basking Ridge, New Jersey.

11. Defendant Marie K. Larsen is an individual who resides at 2 Menemsha Road, Chilmark, Massachusetts 02535. She is, and was at the time of the Board's denial of the Application, a member of the Board and its Chair. She is being named solely in that capacity ("Larsen").

12. Defendant Jeffrey Maida is an individual who resides at 44 Post Oak Road, Chilmark, Massachusetts 02535. He is, and was at the time of the Board's denial of the Application, a member of the Board and its Vice Chair. He is being named solely in that capacity ("Maida").

13. Defendant Matthew Poole is an individual who resides at 14 Whippoorwill Road, Chilmark, Massachusetts. He is, and was at the time of the Board's denial of the Application, a member of the Board and its Clerk. He is being named solely in that capacity ("Poole").

14. Defendant Town of Chilmark, Massachusetts, is a municipal corporation existing under the laws of the Commonwealth of Massachusetts.

**Factual Background**

15. Verizon provides personal wireless services ("PWS") as that term is defined in the TCA. It is licensed by the Federal Communications Commission ("FCC") to provide these services to an area that includes the Town of Chilmark using various bands of radio spectrum.

16. Verizon operates a network of PWS facilities, each consisting of one or more antennas mounted on a building, tower or other structure, such as a utility pole, along with radio and power equipment, and related cabling. These facilities each operate on one or more of the radio spectrum bands licensed to Verizon. The network functions by exchanging low power signals between the user's wireless device and these PWS facilities. As a user being served by a particular facility moves out of range of that facility or the number of users exchanging signals with that particular facility exceeds the facility's capacity, the call or data transmission is automatically transferred to another Verizon PWS facility in the network that is in range and has capacity. If there is no Verizon facility in the vicinity with the capacity and signal strength to accept the transfer and maintain the call or transmission, the user will experience degraded call quality, slower loading of wireless applications or loss of the connection altogether.

17. Connections to wireless network infrastructure, and the telecommunications and ancillary services offered over them, are a critical means by which Americans engage with each other, reach 911 emergency services, and obtain broadband data access to the Internet and a multitude of smartphone applications. Mobile data traffic per smartphone in North America is expected to nearly double, from 25 GB per month in 2025 to 49 GB per month in 2031.[1]

---

[1] *Ericson Mobility Report* (November 2025), at 14. https://www.ericsson.com/4aca6f/assets/local/reports-papers/mobility-report/documents/2025/ericsson-mobility-report-november-2025.pdf.

Furthermore, households are increasingly reliant on wireless telephone service. A study conducted between July and December 2024 found that 78.7% of adults and 86.9% of children in the United States lived in households that did not have a landline telephone but did have at least one wireless telephone.[2] In 2023, 84.1% of Massachusetts households relied either exclusively or mostly on wireless for their telephone service.[3]

18. As people everywhere, including in Chilmark, Massachusetts, increasingly rely on wireless network infrastructure, Verizon undertakes to increase network coverage, capacity and capabilities to meet the rising demand and account for advances in technology. As part of Verizon's ongoing efforts to improve its wireless service throughout Martha's Vineyard, including Chilmark, Verizon plans to install fourteen Small Cells on existing privately-owned utility poles along public rights of way controlled by the Town of Chilmark. These fourteen Small Cells are part of a group of thirty Small Cells that Verizon intends to install on existing utility poles to improve Verizon's service in the western part of Martha's Vineyard. The Small Cells will provide more reliable and robust wireless services and allow the provision of new services to its customers who live, work, and go to school in, and travel through, these communities.

19. The Small Cells are "small wireless facilities" as defined under the Federal Communications Commission regulations at 47 CFR §1.6002(l).

20. Verizon currently provides service in Chilmark through the DAS. Verizon is one of three wireless carriers that are tenants on the DAS, sharing ATC's infrastructure to provide their wireless services in the Town. As a tenant, Verizon does not own or control the DAS equipment

---

[2] National Center for Health Statistics, *Wireless Substitution: Early Release of Estimates From the National Health Interview Survey, July-December 2024* at 2. https://www.cdc.gov/nchs/data/nhis/earlyrelease/wireless202506.pdf.
[3] National Center for Health Statistics, *National Health Institute Survey Early Release Program*, "Table 1. Modeled estimates (with standard errors) of the percent distribution of household telephone status for adults aged 18 and over, by state: United States, 2023" https://www.cdc.gov/nchs/data/nhis/earlyrelease/Wireless_state_202506.pdf.

and is dependent on ATC for the operation, maintenance, and technological capabilities of the system. Verizon has no PWS facilities of its own in Chilmark and there are no towers or other suitable and available structures in or near Chilmark on which Verizon could install a "macro" cell site that would supplant the need for the Small Cells.

21.  Using the Small Cells, Verizon will be able to provide more reliable and robust service to its customers than it is able to provide through the DAS. Verizon will cease using the DAS to provide its service after these Small Cells are installed and operational.

22.  The Small Cells will provide Verizon with much greater capacity, higher data speeds and stronger signals than it has using the DAS. These are necessary to meet the demands on Verizon's network. The Small Cells will each function independently, with a single antenna entirely dedicated to Verizon's licensed spectrum bands and a direct fiber-optic backhaul to the Verizon network, allowing faster data speeds and lower latency than the service provided through the DAS.

23.  Conversely, Verizon and the other two wireless carriers that are tenants on the DAS must share the output of the single antenna at each DAS node and share the capacity of the backhaul and the hub base station that processes the signals for all the DAS nodes. The DAS has outdated equipment and is at the end of its useful life. This results in the degraded service that the Town itself has repeatedly complained about and demanded that Verizon address—yet the DAS's structural limitations make meaningful improvement in service impossible.

24.  Verizon can also tailor the operational characteristics of each of the Small Cells to its own network needs, optimizing for coverage, capacity, and performance, which it cannot do as a tenant on the DAS. Verizon will maintain full control over the Small Cell infrastructure, so it will be able to add spectrum and upgrade the Small Cells efficiently as new technology becomes

available. It also will be able to respond to maintenance needs directly, which it cannot do through the DAS.

25. The Small Cells will allow greater signal penetration within structures and an expanded effective coverage area over what the DAS provides, minimizing the number of dead zones and improving service reliability across the target area.

26. Verizon intends to use its Small Cells to provide services using C-Band spectrum, which Verizon is licensed to use. This would significantly increase capacity and allow Verizon to provide faster data speeds and more reliable service for its customers. The DAS does not support C-Band spectrum.

27. The Town itself has acknowledged and complained about shortcomings in the existing Verizon service in Chilmark, particularly in summer months when the population of Martha's Vineyard swells with tourists and summer residents. In October 2025, the Chilmark Town Administrator, on behalf of the Board, wrote a letter to Verizon requesting that it attend a meeting "to discuss degraded cellular services." The letter says that "we have seasonally seen a reduction in service and availability" from the DAS during the summer, resulting in "degraded service or loss of coverage to areas that otherwise provide coverage." It goes on to say that the summer of 2025 "was much worse" with "dropped calls and new areas of no service" presenting "a serious safety issue for our residents and emergency services."

28. On November 11, 2025, Verizon filed the Application seeking the Board's approval for the fourteen Small Cells that use utility poles in the Town's rights of way. They are primarily along Middle Road and North Road, with one on Tabor House Road, one on Menemsha Crossroad, and one on Basin Road near Menemsha Basin.

29. The Application consisted of a cover letter captioned "Application for Verizon Proposed Small Cell Facilities on Utility Poles in Town of Chilmark Rights of Way," a narrative describing the Small Cells and their purpose, a letter from Eversource, which co-owns the utility poles, authorizing Verizon to file the Application, a copy of Verizon's FCC licenses, a certificate of insurance naming the Town of Chilmark as an additional insured, and site-specific information for each of the fourteen Small Cells covered by the Application. The site-specific information provided for each of the proposed Small Cells included (i) a set of engineering drawings that included, among other things, an aerial image of the pole location, a photograph of the existing utility pole, an elevation drawing depicting the same utility pole with the antenna and equipment installed, antenna and equipment orientation and mounting details, and equipment specifications showing the exact size of the antenna and the other equipment to be mounted on the utility pole; (ii) an engineering analysis certifying to the structural integrity of the existing utility pole with the addition of the Small Cell antenna and equipment; and (iii) licenses granted by the co-owners of the utility poles authorizing the installation of that Small Cell.

30. After Verizon filed the Application, the Board would not schedule a hearing on it until Verizon attended a meeting, as the Town Administrator had requested in his October 2025 letter, for the purpose of discussing its concerns about the quality of wireless service in Chilmark. The Board held that meeting on December 10, 2025.

31. On January 6, 2026, the Board held a public hearing on the Application. After a presentation from Verizon and comments from the public, the Board discussed the Application and then voted to close the public hearing. It then deliberated and ultimately voted to continue its deliberation to its meeting on January 20, 2026.

32.     On January 20, 2026, the Board continued its deliberation and then voted 3-0 to deny the Application. During the discussion, the Chair of the Board stated that the need for improved wireless service presents "a safety issue now," but nonetheless voted with the other two members to deny Verizon's Application. During the hearing, the Board did not make any findings or cite any evidence in the record to support its decision.

33.     Evaluating the proposed installation of Verizon's equipment on existing utility poles at fourteen specific locations along Town roads was the Board's entire purview under the Grant of Location statute. Yet during the two hearing sessions on January 6th and January 20th, the Board never made any site-specific findings about traffic safety, aesthetics, or any other issue that adding Verizon's equipment to the existing utility poles would allegedly cause at any of the fourteen Small Cell locations.

34.     The Board has not issued a written decision or any written explanation setting forth the reasons for denying the Application in its entirety since its voice vote to deny the Application on January 20, 2026.

35.     The Town has no regulations or written policies establishing standards for the Board's review of applications to attach wireless equipment on utility poles in Town rights of way. The Board did not purport to apply any standards in deliberating on and deciding the Application.

36.     At the Board's meeting with ATC and Verizon on December 10th and during the hearing on the Application, Board members, as well as Chilmark's Town Administrator, were candid about their desire to have Verizon remain on and invest in an upgrade to the DAS, apparently believing that denying the Application would be a way to leverage Verizon to do just that. The Board's denial of the Application thus appears to be a tactic to pressure Verizon into

remaining a tenant on the ATC-operated DAS, rather than a decision grounded in any legitimate regulatory concern.

37. During its deliberation on the Application, members of the Board expressed the specious view that allowing Verizon to install its Small Cells on fourteen of the hundreds of existing utility poles in the Town's right of ways would unfairly give Verizon a "monopoly" on using utility poles in Chilmark for wireless facilities. They made that assertion notwithstanding that the actual effect of their denial of the Application is to preserve ATC's position as the sole entity that the Town permits to install antennas on poles in Town rights of way for the purpose of providing personal wireless services. Again, this is the type of outcome that the TCA sought to protect against.

38. The Small Cells and the DAS provide functionally equivalent services within the meaning of 47 U.S.C. §332(c)(7)(B)(i)(I) because they both are technologies that wireless carriers use to provide personal wireless services to end-user customers in Chilmark. The Town has unreasonably discriminated against Verizon because it has denied Verizon the right to attach its Small Cells to utility poles in the Town right of way but allowed ATC to attach its DAS equipment to utility poles in the Town rights of way. This disparate treatment lacks any legitimate regulatory basis and serves only to protect the incumbent DAS provider.

39. The antennas and equipment that Verizon proposes to attach to existing utility poles for its Small Cells are similar in nature and appearance to (albeit smaller and less visually obtrusive than) the existing DAS equipment ATC has attached to its poles. They also are similar in nature and appearance to the equipment that would be installed if the DAS were expanded with additional nodes, as the Board has advocated. The Board's refusal to permit Verizon's less-intrusive equipment while actively encouraging the expansion of larger DAS infrastructure is inherently

unreasonable and reveals a preference for a specific method of deploying Verizon's spectrum which is beyond the Board's authority.

40. By forcing Verizon to remain on the DAS if it wants to provide service in Chilmark, the Town creates a monopoly for ATC, which can then charge whatever it wants for DAS access and upgrades. There is no competitive check on ATC's pricing because the Town has eliminated the only feasible alternative Verizon has—installing its own Small Cells. The cost of upgrading the DAS to better support Verizon's technology would be a financial burden on Verizon that is exponentially greater than the cost of deploying its Small Cells, and even then, Verizon would not be able to fully deploy its desired technology.

41. The TCA requires that any decision by a state or local government or instrumentality to deny a request to place, construct, or modify personal wireless service facilities be in writing and supported by substantial evidence contained in a written record. 47 U.S.C. §332(c)(7)(B)(iii). The reasons for the denial must be communicated in writing "essentially contemporaneously" with the written notice of denial. *T-Mobile South, LLC v. City of Roswell*, 574 U.S. 293, 307 (2015). Here, the Board's voice vote to deny the Application has been communicated in writing only via the draft minutes for the January 20, 2026 Board meeting which were posted on the Town's website on February 12, 2026 and document the Board's vote without providing any reasons for the decision. The reasons for the decision have not been provided in writing, and the denial is not supported by substantial evidence—or, indeed, any evidence—in a written record.

42. Verizon is a personal wireless service provider entitled to the protections of the TCA. Verizon's Application is a request to construct PWS facilities, and the denial of the Application is therefore subject to the TCA.

12

## COUNT I
### (Violation of TCA Because Denial is Not Supported by Substantial Evidence)

43. Plaintiff's allegations contained in paragraphs 1 through 42 above are incorporated by reference as if fully set forth herein.

44. The TCA requires that decisions to deny a request to "place, construct or modify" a personal wireless services facility "be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

45. The Board did not provide a written decision with an explanation for the denial.

46. There is no substantial evidence in a written record to support the Board's denial of the Application. The Town has no regulations or written policies establishing any standards for the Board's review of proposed attachments to utility poles in Town rights of way. The Application and the other information Verizon presented to the Board in support of the Application demonstrate conclusively that none of the fourteen Small Cells on existing utility poles will interfere with the use of the Town right of way or create safety or other issues.

47. The Board never considered or made any site-specific findings about safety or any other issue that the proposed addition of equipment to the existing utility pole would allegedly cause at any of the fourteen Small Cell locations, even though evaluating the proposed installations on each of those specific utility poles was the full extent of the Board's purview under the Grant of Location statute. The Board made no findings whatsoever in support of its vote. Its motion was simply a motion to deny the Application.

48. The Board's failure to support its denial of Verizon's Application by "substantial evidence contained in a written record" violates 47 U.S.C. §332 (c)(7)(B)(iii).

49. The TCA vests this Court with authority to grant mandamus relief if it would be warranted under the circumstances.

50. Verizon is entitled to a declaration that the Board's denial of the Application violates the TCA because it does not satisfy the requirement that a decision to deny a request to place, construct or modify a PWS facility must be in writing, provide the reasons for the denial "essentially contemporaneously" with the denial, and be supported by substantial evidence. Verizon is also entitled to an order of mandamus directing the Board to allow Verizon to install, operate and maintain its Small Cells on utility poles within the Town's right-of-way in accordance with the Application.

## COUNT II
### (Discrimination Between Providers of Functionally Equivalent Services in Violation of 47 U.S.C. § 332(c)(7)(B)(i)(I))

51. Plaintiff's allegations contained in paragraphs 1 through 50 above are incorporated by reference as if fully set forth herein.

52. 47 U.S.C. § 332(c)(7)(B)(i)(I) prohibits municipalities from unreasonably discriminating among providers of functionally equivalent services. Discrimination is "unreasonable" when it lacks a legitimate regulatory purpose or is intended to favor one technology or provider over another.

53. The personal wireless services carriers provide through the DAS are functionally equivalent within the meaning of the TCA to the services Verizon proposes to provide through its Small Cells. Because Section 332(c)(7)(B)(i)(I) prohibits discrimination among providers of "functionally equivalent services," the statute directs the relevant comparison to the type of personal wireless services delivered to end users, and the personal wireless services that carriers currently deliver to Chilmark consumers through the DAS are of the same type as those Verizon proposes to deliver through its Small Cells.

54. The antennas and equipment that Verizon proposes to attach to existing utility poles for its Small Cells are similar in nature and appearance to (albeit smaller and less visually obtrusive than) the existing DAS equipment ATC has attached to its poles. The Verizon equipment is also similar in nature and appearance to the equipment that would be installed if the DAS were expanded to additional poles as the Board has advocated.

55. The Board's denial of Verizon's Application unreasonably discriminates against Verizon in violation of 47 U.S.C. § 332 (c)(7)(B)(i)(I). The Board's desire to use its permitting authority as leverage to force Verizon into a third-party business arrangement with ATC is not a legitimate basis for denying the Application.

56. Verizon is entitled to a declaration that the Board's denial of the Application is unreasonable discrimination in violation of the TCA. Verizon is also entitled to an order of mandamus directing the Board to allow Verizon to install, operate and maintain its Small Cells on utility poles within the Town's right-of-way in accordance with the Application.

## COUNT III
**(Effective Prohibition of Wireless Services in Violation of 47 U.S.C. § 332(c)(7)(B)(i)(II)**

57. Plaintiff's allegations contained in paragraphs 1 through 56 above are incorporated by reference as if fully set forth herein.

58. 47 U.S.C. §332(c)(7)(B)(i)(II) states that the regulation of personal wireless service facilities by municipalities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

59. Verizon currently provides its wireless services in Chilmark through the DAS operated by ATC. The service Verizon can provide through the DAS is limited by the DAS's technological constraints. Members of the Board and other Town representatives have commented

on and complained to Verizon about deterioration in the quality of service Verizon provides in Chilmark using the DAS.

60. On the DAS, Verizon experiences a significant coverage gap in the form of "dead zones" in areas the signal from the DAS is not strong enough to reach, and unreliable in-building coverage. Verizon also has limited signal from the DAS, which leads to inadequate service during times of heavy demand, particularly during summer months, as the Town itself has noted. Verizon is also unable to deploy its licensed C-Band spectrum through the DAS.

61. There are no feasible and practical alternatives available to Verizon for addressing the service quality and reliability issues that it experiences in Chilmark other than the installation of the Small Cells.

62. Moving from the DAS to the Small Cells will improve the quality of Verizon's wireless services in Chilmark, allowing it to provide service in areas it cannot reach using the DAS. The Small Cells provide substantially increased capacity to handle calls and data transmissions, increasing service reliability. The Small Cells also allow Verizon to provide services to customers in Chilmark that it is unable to provide using the DAS. The TCA forbids the Town from making a decision that has the effect of prohibiting Verizon from expanding the capacity and reliability of its service and making use of its allocated spectrum. By denying the Application, the Board did just that.

63. Verizon is entitled to a declaration that the Board's denial of the Application effectively prohibits it from providing its personal wireless services in violation of the TCA. Verizon is also entitled to an order of mandamus directing the Board to allow Verizon to install, operate and maintain its Small Cells on utility poles within the Town's rights-of-way in accordance with the Application.

## COUNT IV
### (Effective Prohibition of Wireless Services in Violation of 47 U.S.C. §253)

64. Plaintiff's allegations contained in paragraphs 1 through 63 above are incorporated by reference as if fully set forth herein.

65. 47 U.S.C. § 253(a) states, in relevant part: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." This provision broadly preempts legal requirements that inhibit competition leaving states and municipalities with a narrowly circumscribed role in this area, subject to the safe harbors in Sections 253(b) and (c).

66. Section 253(b) states that "[n]othing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254 of this title, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers."

67. Section 253(c), requires local governments to "manage rights-of-way…on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis …." Under Section 253(c), state and local governments may not use their control over public rights-of-way to skew the competitive playing field in favor of any particular telecommunication services.

68. The denial of the Application has the effect of preventing Verizon from deploying its licensed C-band spectrum which would provide increased capacity and improve Verizon service for consumers.

69. In denying the Application, the Board failed to exercise its limited authority to review utility pole attachments under state law in a competitively neutral and nondiscriminatory

basis. In the hearing on the Application, and in prior discussions and communications with the Board members, the Town Administrator and other Town officials expressed their strong preference for Verizon to continue providing its services through the DAS rather than deploying its Small Cells. This was done to effectuate the Town's de facto policy of requiring that PWS providers who want to attach to utility poles in the right of way operate exclusively through the DAS.

70. The denial of the Application violates 47 U.S.C. § 253(a) and is not protected by the safe harbors in §§ 253(b) or 253(c). The Board's denial does not preserve universal service, protect public safety, or manage rights-of-way on a competitively neutral basis; rather, it compels Verizon to operate exclusively through a single third-party provider, which is the antithesis of competitive neutrality.

## COUNT V
### (Denial of Grant of Location in Violation of State Law)

71. Plaintiff's allegations contained in paragraphs 1 through 70 above are incorporated by reference as if fully set forth herein.

72. Under M.G.L. c. 166 §22 ("Grant of Location ("GOL") Statute"), the Board is authorized to grant, upon petition, an order specifying where within a public way "poles, piers, abutments or conduits may be placed, and in respect to overhead lines may also specify the kind of poles, piers or abutments which may be used, the number of wires or cables which may be attached thereto, and the height to which the wires or cables may run." It also may "by order permit an increase in the number of wires or cables, and direct an alteration in the location of the poles, piers, abutments or conduits or in the height of the wires or cables." In making a decision under this statute, the Board must not be arbitrary and capricious or unreasonable and its decision must be supported by substantial evidence.

73. The Application requested the Board's approval to attach Small Cells to fourteen existing utility poles at various locations along five different Town roads in accordance with plans submitted to the Board as part of the Application. Without justification, the Board denied the Application in its entirety with respect to all fourteen Small Cells. The Board never evaluated or made any site-specific findings concerning whether the addition of a Small Cell on the existing utility pole at any of the fourteen locations covered by the Application would present public safety or other problems that would warrant the Board in denying Verizon's request to install a Small Cell at that location, even though that was the full extent of its purview under the Grant of Location Statute.

74. In denying the Application, the Board exceeded its authority under the Grant of Location Statute. Its decision was arbitrary and capricious, unreasonable and contrary to the evidence in the record.

**WHEREFORE**, Plaintiff Cellco Partnership d/b/a Verizon Wireless respectfully requests the following relief:

1. An expedited review of the matters set forth in this Complaint, as provided by the Telecommunications Act of 1996, Pub. L. 104-104, § 704, 110 Stat. 56, codified at 47 U.S.C. § 332(c).

2. A declaration that the Board's denial of the Application violated the Telecommunications Act of 1996, 47 U.S.C. §§ 332(c) and 253.

3. A declaration that the Board's denial of the Application violated Massachusetts law because it was arbitrary and capricious, not supported by the record and exceeded the Board's authority under the Grant of Location statute, G.L. c. 166 § 22.

4. An order annulling the Board's denial of the Application.

5. An order of mandamus directing the Board to allow Verizon to install, operate, and maintain its Small Cells in accordance with the Application.

6. Such further relief as the Court may deem appropriate and proper.

**PLAINTIFF,**
**CELLCO PARTNERSHIP d/b/a**
**VERIZON WIRELESS,**

By its attorneys,

/s/ Michael S. Giaimo
Michael S. Giaimo (BBO #552545)
mgiaimo@rc.com

/s/ Danielle Andrews Long
Danielle Andrews Long (BBO #646981)
dlong@rc.com
Robinson & Cole LLP
53 State Street
32nd Floor
Boston, MA 02109
(617) 557-5900

Dated:  March 16, 2026